The next matter for argument this morning is Vento v. Crithfield et al., or Vento et al. v. Crithfield et al., I should say. Counsel, you may come forward, please. Mr. Thurston. Mr. Thurston, I'm passing that directly to you. Correct. Fulton, I'll pass it by your team. Mr. Thurston, you may proceed. Thank you very much, Your Honor. I would like to reserve two minutes for rebuttal. Two minutes. All right, granted. Two minutes, rather than three. May it please the Court. I don't think that there is any real dispute between the appellant and the appellee with respect to the actual decision that was rendered in connection with these proceedings. There really was not a decision because it was an order that was accompanied by really nothing further. There was no binding fact. Right. And we understand that. I confess, for me anyway, there are, however, some ambiguities or there is some lack of clarity with respect to a couple of preliminary matters, what we might call housekeeping matters. And I'd like to try to resolve those first. Alliance Royalties LLC was not included in the District Court's September 30, 2015, judgment. And it wasn't addressed in the District Court's September 30, 2016, order, which was a partial denial of reconsideration. So, it has appeared that there's no judgment that entered into that part of the AR LLC and that the mentors don't dispute the resolution of their claims against AR LLC. Am I right about that? Alliance Royalties LLC was an entity that was formed by – that was not my question. I'm going to take a long time resolving a lot of the preliminary matters. I don't get answers. I mean, is there any dispute or not? There's not. It's not included as a hierarchy of order of Judge Gomez. Can you point us to a specific place in the record where you pressed your claims against AR LLC and preserved them for appeal? I cannot wait standing here right now. Well, I didn't find it in your brief either. So – well, let me ask you about another part. September 30, 2016, order, partially denying reconsideration. Again, there the District Court granted a judgment against First Fidelity Trust, FIT, and Fidelity Insurance Company, FIC, and Citadel Insurance, CIC. May we presume that you're not challenging this favorable decision? Obviously, we're not. All right. So you would agree that the grant of that entry of judgment means that none of the remaining arguments pertaining to personal jurisdiction over FFT, FIC, and CIC, they can all be disregarded in as much as the entry of judgment. Obviously, it indicates that the District Court has expressed personal jurisdiction over those three entities. Ordinarily, Your Honor, I would agree with that. should be taken into consideration. And as a result of that, the author entry should be brought up. Well, is there an alleged legal injury within the jurisdiction? Absolutely, Your Honor. What was that? What was the claim? The racketeering enterprise that was created by Mr. Donaldson, Mr. Crisfield, and Mr. Lake may have originated in their minds when they were residing in Florida, Nevis, Anguilla, and other jurisdictions. But they targeted wealthy individuals like the Vento family in order to separate them from their wealth. And what were the actions, the RICO actions, that occurred within this forum? The RICO actions were the taking of those funds under false pretenses, causing those funds to be appropriated, causing new entities, including the offshore entities that we're talking about here, to be formed so that they could take it from one pocket, put it into another pocket, and then put it offshore. So even after they agreed to pay back the funds in writing, in the settlement agreement that was mediated, and as a result of the arbitration of war, that it was beyond the ability of the Ventos to obtain those funds. It was essentially allowing – essentially what they did was they took funds from the Ventos, ran it through the machinery, milled it to every dime they could, and was never left over and subject to being able to be executed or have under the judgments. They then formed new entities in order to frustrate the ability of the Ventos to – Okay, but we can go – what is the domestic injury? The loss of the funds? It is the loss of the funds, it is the loss of inheritance, it is the loss of private annuity payments that were required to be made to the Ventos in the Virgin Islands. You have to understand that this was a very – Excuse me a second, I believe Jim Sirica has a question. Yes. Any of these assets located in the Virgin Islands over which there's personal jurisdiction? The assets that were taken from the Ventos were moved from the state of California to the U.S. Virgin Islands, to the Cayman Islands, and then from the Cayman Islands into the island of Anguilla and the island of Nevis. They ended up at the National Bank of Anguilla, where Mr. Keithley Blake, one of the defendants in this case's brother, was the president of the bank. We also have proof that established that Mr. Victor Banks, who is the Minister of Finance of Anguilla, was paid approximately $1 million by this enterprise, so that the complaints that were brought by the Ventos directly against these individuals and these companies would settle, and that there would be no more victims. But there were – you have referred during your arguments, and I think make mention of this in your brief, that there was a lack of reasoned opinion, reasoned opinion from the district court, and that that has left you in some state of confusion, I suppose. But you didn't move at any point to have the district court clarify its order or to request further reasoned opinion? Judge, we made motion for reconsideration after – After that? Yeah, and after that, we received the court's order, and it was our impression that based on where we were going to get there, we would be proceeding with specific findings, in fact, that never happened. All right, but – We were careful to make sure that we were well-established, but it's out of appeal. All right. Let me ask you another argument, another argument you've raised. You have invoked the choice of law provision in the settlement, or taking the position of choice of law agreement in a settlement agreement or arbitration agreement. Is the equivalent conceding your personal jurisdiction? It's our position that by entering into the arbitration agreement, by the district court's approving them, staying the proceedings in the district court, that that constitutes a – The arbitration agreement has a clause that specifically preserves all defenses. There is a specific clause that preserves defenses, and the proof in this case has, in our opinion, overwhelmingly established that there was personal jurisdiction, not only by the law. Well, there's two different points there. There are two different points there. That is correct. So the settlement – the arbitration – the settlement agreement is different because that does not have a reservation of rights clause. Arbitration agreement, though, does have a reservation of rights clause. It does have a reservation of rights clause, and I think specifically says that this agreement, in our prediction, will not be considered as a waiver of the rights that defendants may have to raise personal jurisdiction in the district court. So that doesn't give you invoice settlement of jurisdiction. In fact, they enter it into the arbitration agreement. It doesn't allow me to just ignore it, obviously. What it allows me to do, however, is to bring before the district court specific proof that there was an agent that the Fidelity Insurance Company had. The agent was at a waterfront. His name was Gary Hatch. There were photographs of the agent. Who was – who is Gary Hatch? Wasn't he actually the agent of your client? He was actually the investment representative that was appointed by Fidelity Insurance Company pursuant to a written contract. Your client had no agreement to – that he was to act as their agent? He did. He was a double agent. And the lawyers who were representing the Fidelity Insurance Company, handlers there and Duggan, were also acting as lawyers for the Levendo family. And it's interesting. They took off $1 million in legal fees from the Levendo family. And then after the transfer of the funds of $34 million came from the hands of Fidelity, handlers there and Duggan got themselves another $1 million payment. You're relying repeatedly on Hatch's declarations. Yes. But the only mention that I could find in the declaration was to an Alliance Holding Company. And it mentions that the Fidelity Insurance Company was owned – or was owned by a company registered in Nevis named Alliance Holding Company Limited. But that doesn't tie you into the version I was finding by virtue of the declarations, does it? In the proof that we submitted to the district court, we were able to, I believe, show that there was an umbrella called Alliance Holding Company that was formed in the island name of Nevis. And I was going to ask that. If you can get – it's a piercing bill, is it? Yes. And what – how do you pierce the bill based upon the record that is here of what was done to try to get beyond the corporate entity? Well, they were personally involved in taking funds and divesting the funds in the way that they were. And when I talk about the Alliance Holding Company at the time, I'm talking about the subsidiaries, the individuals who worked for them. But Alliance Holding Company then was able to receive funds. So they were one of those groups. They had to pay $34 million. Funds would come in. They would be skimmed off as a result of various… They'd come into which entity? And then they would go upstream. Which entity would they come into? The individual subs? They would go into a plethora of entities. They would go into, first, Fidelity Trust. They would go into Fidelity Insurance Company. They would go to Westminster Home and Terminary. They would go into Alliance Realty System. They would go into another company called Water. They would go into another company called Malibu. And they'd end up with Alliance Holding. And they were all under Alliance Holding. That's correct. There was one… Is that enough to get you to pierce the corporate bill of Alliance Holding so that the actions of one of the subsidiaries are harmless in the city area? I think that it may not under some circumstances, but when we're able to show that the Minister of Finance of the country of Anguilla is receiving millions of dollars of payments as a result of his ownership of Alliance Holding, and then he ignores the complaints that are being filed about the very victims that are being leased as a result of this, I think that it raises much more than a little bit of a stain. Let me return to another housekeeping or preliminary issue. Yes, Your Honor. I did not see anywhere in your brief an argument about the long-run strategy of breaching Fortress and HH or AP Holdings. Are you conceding here that those entities do not have any minimum contacts with the FBI? Judge, those two entities, Newhall Holdings and… Actually, I mentioned three, Fortress, NHH, and AP Holdings. Those were entities that were being utilized in order to accept funds from the alcohol core companies, the originating companies. So the answer to my question is? The answer to your question is they were fraudulent advances that were made to those companies, and I believe that that would make the subject of long-run strategy as a result of the fraudulent advances. Judge Sirica, do you have questions? No. Very well. Thank you very much. We'll head back on to the questions. Thank you very much. Mr. Bowne. Thank you, Your Honor. May it please the Court? My name is John Bowne. I have a law on the subject. I've been on the PCU for a period of this appeal for an Alliance Holding Company LTV, and I also prepared the consolidated brief on behalf of all of the Apple East, and have been designated to present the oral argument on this matter. You can only do three Apple Easts? Three Apple Easts, yes, Your Honor. The Apple Easts listed on the brief were Alliance Holding Company, Newhall Holdings, and Westminster Hook and Turnberry, is that right? That's correct, Your Honor. And what happened to everybody else? Most of them. Without revealing any confidences, Your Honor, I can say that those other entities are not capable of trying to do the same thing. If you look in the record of the district court, you will find that there was a motion to withdraw as counsel. That was ultimately, I say, denied without prejudice by the district court, because we have set myself and Jerry Gray, who is co-counsel on this matter, to move to withdraw because those entities are either dissolved or defunct and inequal of doing anything, including directing counsel. Are you suggesting in your brief, as seemed to be suggested or implied perhaps by your answer, that the lack of a reasoned opinion from the district court somehow precludes us from exercising jurisdiction? It's not the—to try to respond to the first question, it's not so much the lack of a reasoned opinion that would draw us towards jurisdiction. The question is the fact that the court doesn't say that this is the end. Is that the same thing as saying that we lack a final warrant? Well, I'm not sure we have a final warrant. There is one thing that we look at— Well, your lack of certainty really doesn't help us. I mean, either there is or there isn't. The lack of a reasoned opinion gives us two problems. One is the question of this court's jurisdiction. It's not clear whether or not this is the district court's final word on this matter, because for one thing, there was no direction from the court once this was— Did you ever—let me ask you the same question. I asked him this question. Did you ever move the court to clarify the matter or to request a reasoned decision? No, we did not. The court, in its footnote to the judgment, footnote one of that, one of the judgments says, I'll be issuing a memorandum of opinion later outlining my—the reasons for my ruling, but there has yet been no memorandum of opinion issued. It's strange because it was a request of the arbitrators not to make any conclusions from that court at all, which particularly troubles me on the legal aspect, because there was no finding at all. As I recall, Judge Schroeder didn't reach the legal thing. There was no finding of legal enterprise. There was no finding about smoothness of the formation of legal enterprise. You could have warned about that, but we see it pop up now. Let me ask you this. What, if any, significance should we draw from the fact that there is a reservation of rights clause in the arbitration agreement but not in the settlement agreement? And given your client's consent to have the law in the first round of its government, why wouldn't that be sufficient to consent to 8% on jurisdiction under the settlement agreement? Under the settlement agreement, first the—I'll try to work my way back through the elements of the court to say that the choice of law, the choice of selecting virgin islands law to apply to— that was to the—both to the arbitration, the agreement to arbitration, to the issues that were going to be determined in arbitration, and to the enforcement of the settlement agreement. That was all choice of virgin islands law. But that does not—that is simply a choice of law. You can have a choice of law provision in a category selecting New York law that has no— it doesn't mean that you are submitting to the law— it doesn't mean you are submitting to the personal jurisdiction of the forum whose law you select to kind of substantively control the issues in the case. Well, let me raise another question relative to how perhaps one of the accolades might go submitted to jurisdiction. Westminster—WHT. They're the only athlete here that joined in the motion to vacate the arbitration rules. Is that right? I don't have a motion in front of me, Your Honor, although I didn't prepare it. I don't believe that—I believe that I'll take the court as being correct. Irrespective of how many participating athletes here, did that motion effectively request substantive relief from the jurisdiction? It requested the court to vacate the arbitration award. The thrust of the argument of that motion was because they— that host had already assigned away all of their rights to the award and to the settlement agreement, to another end. If that's affirmative relief being sought, isn't that submission to the jurisdiction of the court? I mean, isn't that sufficient to ask it in another way or to weigh objections to personal jurisdiction? No, Your Honor. And the district court directly addressed that question in September 30, 2015, which was the subject of the appellate's subsequent motion for consideration. And we relied on that same case law that the fact that you have moved to vacate an arbitration award in the case law is clear that that does not constitute a submission to the jurisdiction of the court. And I remember, as far as the record of this matter, that was extensively discussed by the district court at—included in our appendix in this matter, commencing on pages—page 42 of the appendix through 43 of the appendix. Judge Sirica, do you have any questions at this juncture? We're not quite halfway through the presentation. Are there any assets of these entities in the Virgin Islands at this time? No. And were there at the time to file? None that I'm aware of, but I believe the ultimate answer would be that there were no assets of these companies ever present in the United States Virgin Islands. Proceed. Thank you. To return to, perhaps, as the Court would refer to it as a housekeeping matter, or the how do we deal with this case on appeal of the second, beyond appellate jurisdiction, if this Court finds that it has jurisdiction, despite the somewhat unclear nature of the Court's judgment of September 30, 2016, the next question is what standard of review should this Court apply? Because there is no fact there, because it is a straight judgment, there is no fact-finding as to any of the entities here, the ones that the Court found that it could exercise jurisdiction over, the ones that the Court denied confirmation because of a lack of personal jurisdiction. That affects this Court's standard of review. If you don't—if the Court has made no findings of fact to support, it's ruling that if one entity is and another entity is not subject to the personal jurisdiction of the Court, we are left with whether or not it should be—if it was a finding of fact, this Court would be applying a standard of whether or not it is thoroughly erroneous. Our position is, on this appeal, because the Court made no specific findings of fact, no specific conclusions of law, that all the Court is left is whether or not the district court abused its discretion in the way that it issued its judgment addressing the athlete's motion for reconsideration. And I don't believe that what we have in the record here would indicate that the district court in any way abused its discretion. And that's because there's no issue of law to review and therefore you're not getting no more review? I'm sorry, I didn't quite— You're saying abuse of discretion, is that because there is no conclusion of law from the arbitration award, and therefore there's really no piece of law in the district court to review? And wouldn't it be no more review because it's not up to abuse of no vote? Is that what you're— And not the arbitration award, the parties agreed to a non-reasoned award, but as to the judgment that was entered in the district court, we are left with yes, the answer is yes, we are at the abuse of discretion stage because we have no specific conclusions of law, we have no findings of fact by the district court to review. So all we are left with is the ruling of the district court, and our position would be that the ruling of the district court is a motion for reconsideration. That decision is subject only to us being reviewed for abuse of discretion by the court. I'd like to ask about Garrett Hatch. Was he an agent of any of your clients, any of the athletes? He was hired as the investment manager by the Mentos. The written contracts—I don't have the appendix references at hand, but the written contracts between Hatch and the Mentos where they hired him as their investment manager, those are part of the record, those are part of the declaration of Gary Hatch that was included in the appendix. He had a written agreement, but not with any of the athletes that we represent. The written agreement was with First Fidelity, and Fidelity Insurance and Water Carrying LLC. He had a producer's agreement with them. What was the termination letter that the Mentos referred to, citing support of the pretension that there was such a relationship? You find the—I had to dig through the appendix to find that myself, Your Honor. Actually, it's at JA 1345. Correct. Penitentiary 1345. It's a termination letter on the letterhead of Alliance Holding Company, from Nevis to Mr. Hatch in Utah, saying that you are no longer permitted to deal with our financial products. There's not one single reference in that to the Virgin Islands or nothing establishing that there's any nexus. Did he work there or did he have an office? Is he the same as Mackenzie Finch? Mackenzie Finch was a parent. The exact—how he came up with the name Mackenzie Finch, I'm not sure, Your Honor, because Gary Hatch was not an employee or anything else of Alliance Holding. His contract with the so-called producer agreement specifically states he's an independent contractor. You're saying he did not operate under that name? He currently used it on his letterhead and used it as an address, but exactly what Mackenzie Smith was, I am unclear. The record is unclear and I am unclear. If Hatch worked for—and there were three Appleys here, and he has an office in the Virgin Islands, shouldn't that give rise to a personal jurisdiction? No, Your Honor, not without more proof that the claims that were arbitrated had some arose from those transactions. We're talking now we're into the position of whether or not there's specific jurisdiction versus general jurisdiction, I believe. And the—I believe the Supreme Court in the Daylor matter has specifically stated that agency relationship is not sufficient to establish general jurisdiction over a corporation in a jurisdiction, in a particular forum. That doesn't—of course, the Daylor case only dealt with general jurisdiction. It did not clear up any of the confusing aspects of specific jurisdiction. But here, the record lacks any showing that these—any actions of Hatch taken that may have occurred in the Virgin Islands doesn't indicate that they were the—they gave rise to any of the claims that eventually went arbitration. And I'll give—I see the yellow symbol. Light, Your Honor. All right. The—to sum up, first, we are unclear if there's any further action to be taken by this Court rather than an affirmance of what has occurred below. That would simply be, I think, a remand to the district court to enter findings of fact and conclusions of law. However, our position is that this Court can simply review the judgment that was entered by the district court for abuse of discretion, find there's no abuse of discretion, and affirm the judgment of the district court, which denied confirmation of the award as to the three appellees in this matter. Does the Court have any further questions? Judge Sirica, do you have questions? Why wouldn't a better course be to remand so we get findings? Well, would that—that is—I think that is a matter for the discretion of this Court. However, the— Well, he's asking wouldn't that be the better course. Which would be—which would be the better course? Well, we would be back, Your Honor. The— You're always wrong. Thank you, Your Honor. Although, to my mind, the Court did have a judgment. The fact that it is worded in such a fashion that it defies appellate review, except under an abuse of discretion standard, does not mean that the best thing to do would be to remand for further proceedings in the district court. That this judgment should stand to be simply reviewed for abuse of discretion and be done with it. Any further questions? There's nothing further for my colleagues. Thank you very much, Mr. Benham. Thank you. Mr. Feist. Thank you, Your Honor. Very briefly, of course, from my perspective, Mr. Hatch, I think he can be described as not only the investment producer for three of the entities that we have articulated and referenced at appendix 999, as regional director of Bosford Dunhill, agent of Fidelity Insurance Company, but he also acted as an investment advisor for the Dunhill family and maintained an office around the waterfront. An office on the waterfront, all during the time that is relevant to these proceedings. I think that if we take a look at the long-arm statute and take a look at the circumstances, that a remand with direction to include the offshore companies as transcurrees on the assets that were formed after the transactions took place would be appropriate. Obviously, they fall within the parameters of the long-arm statute. They transact in business. They cause forceless injury by act of omission inside the territory. They cause forceless injury outside. They regularly solicit business from vendors and others in this jurisdiction. And importantly, they contract to insure persons' properties and risks. Under the circumstances, I think that it would be appropriate to remand with instructions that the offshore defendants who received the benefits that were stolen from Virgin Islands residents who have been, since 2009, attempting to recover over $34 million in assets would be appropriate and the type of action that they should expect. Thank you very much. Thank you, sir. We thank both the Council for their arguments, their assistance in this matter, which is not without its complications. We thank them both. And for the benefit of Judge Sirica, we're going to take a five-minute recess. Thank you.